OPINION
Defendant-appellant, Andrew L. Romer, appeals his conviction in the Mason Municipal Court following a no contest plea for driving while under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1), and for consuming alcohol in a motor vehicle in violation of R.C. 4301.64. In his sole assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Specifically, appellant argues that his driving over a patch of grass while making a U-turn in a dead-end fire lane did not give the arresting police officer reasonable and articulable suspicion to stop him, and thus the initial traffic stop of his vehicle was invalid. For the reasons that follow, we affirm the trial court's decision.
The events precipitating appellant's arrest, as testified to by Deputy Sheriff Scott Staverman of the Warren County Sheriff's Office, are as follows: In November 1999, Deputy Staverman was living in a condominium complex in the 4800 block of Bordeaux Lane in Deerfield Township. On November 7, 1999, at about 11:45 p.m., Deputy Staverman, intending to exit the complex, was getting into his cruiser when appellant drove past him. The deputy observed appellant turn onto a one-lane dead-end fire lane off Bordeaux Lane. The fire lane is about one-tenth of a mile long and ends with a closed gate. Within the past three months, the deputy had received repeated complaints from several area residents regarding cars driving down the fire lane, tearing up the grass, and going around the gate to access Mason-Montgomery Road.
Deputy Staverman testified that although there was not a "No Outlet" sign at the entrance to the fire lane itself, there was "only one way in and out of the complex[.]" The deputy's testimony also indicates that there was at least one "No Outlet" sign either in or at the entrance of the complex area. Upon seeing the gate at the end of the fire lane, appellant made a wide U-turn and drove over the grass in the process. As appellant was coming out of the fire lane, the deputy stopped appellant's vehicle.
Deputy Staverman approached appellant's vehicle and asked appellant why he had driven over the grass to make his U-turn. Appellant stated that he was lost and was trying to go home. The deputy's testimony indicates appellant had been living in a nearby subdivision for three weeks. During their conversation, the deputy detected a very strong odor of alcohol about appellant's breath and noticed that appellant had very glassy eyes. The deputy also noticed several empty beer cans in appellant's car as well as a half-full beer bottle underneath the driver's seat. Appellant denied having had anything to drink. After appellant failed to satisfactorily perform four field sobriety tests, the deputy arrested appellant for DUI and transported him to Warren County Jail where he was given a breath test.[1]
Appellant subsequently filed a motion to suppress. On March 16, 2000, following an evidentiary hearing, the trial court denied appellant's motion. The record does not indicate the trial court's reasons for its decision. That same day, appellant entered a no contest plea to both charges, was found guilty by the trial court, and was sentenced accordingly. This appeal follows.
When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by substantial and credible evidence.State v. Williams (1993), 86 Ohio App.3d 37, 41. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standard to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691.
As we clearly stated in State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported, there are two types of traffic stops, each with a different applicable constitutional standard. Id. at 3. First is the "non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code * * *. Second is the investigative or 'Terry' stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. * * * A non-investigatory traffic stop must be supported by probable cause [whereas] an investigatory Terry stop is proper as long as the * * * officer has `reasonable articulable suspicion' of criminal activity."Id. at 3-4, citing Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. (Other citations omitted.)
It is undisputed in the case at bar that appellant committed no traffic violation. The issue is then whether the initial traffic stop of appellant's vehicle was a proper investigatory Terry stop.
Pursuant to Terry, "a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Andrews
(1991), 57 Ohio St.3d 86, 87, quoting Terry v. Ohio (1968), 342 U.S. 1,21, 88 S.Ct. 1868, 1880. The existence of reasonable suspicion must be considered in light of the totality of the circumstances. State v.Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981),454 U.S. 822, 102 S.Ct. 107. "[T]hese circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Andrews at 87-88, citingUnited States v. Hall (C.A.D.C. 1976), 525 F.2d 857. An area's reputation for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative stop is warranted. State v. Bobo (1988), 37 Ohio St.3d 177,179.
We recognize at the outset that the circumstances of this case present a close question of fact. However, upon a thorough review of the record, we find that the trial court properly denied appellant's motion to suppress.
It was about 11:45 p.m. when Deputy Staverman first noticed appellant. The deputy observed appellant turn onto the one-lane dead-end fire lane off Bordeaux Lane. Within the past three months, the deputy had received repeated complaints from several area residents regarding cars driving down the fire lane, tearing up the grass, and going around the gate to access Mason-Montgomery Road. "Past incidents of numerous law violations of a particular character definitely constitute a fact that officers may consider in the totality of circumstances they rely upon * * *." Bobo,37 Ohio St.3d at 179.
Appellant cites State v. Ventura (Sept. 23, 1994), Miami App. No. 93 CA 1, 1994 Ohio App. LEXIS 4650, unreported, for the proposition that the incidents complained to the officer in the case at bar were too remote to support a reasonable suspicion. We disagree. However, unlike inVentura, where criminal activity in the stop area had occurred one year earlier, the criminal activities complained of in the case at bar had occurred within three months of appellant's arrest, and thus were sufficiently close in time to support a reasonable suspicion.
Upon realizing that the fire lane was a dead-end lane, appellant made a wide U-turn, driving over the grass in the process. The deputy testified that appellant never put his car in reverse to get out of the fire lane. In Ventura, the Second Appellate District found that the defendant's turn onto a dead-end street before making a U-turn did not give reasonable suspicion to the police officer to stop the defendant because "a lost driver might very well enter and then make a u-turn to leave." Id. at *6. However, in the case at bar, the deputy clearly testified that although there was not a "No Outlet" sign at the entrance of the fire lane itself, there was "only one way in and out of the complex[.]" The deputy's testimony also indicates that there was at least one "No Outlet" sign either in or at the entrance to the complex area. The "No Outlet" sign was there for appellant to observe while driving into the complex area and his failure to observe it, as demonstrated by his conduct, supports an inference that he was impaired to some extent.
Based upon an analysis of the totality of the circumstances, which must be viewed through the eyes of a reasonable and cautious police officer on the scene, Andrews, 57 Ohio St.3d at 87, we find that the foregoing facts, when taken collectively, support a reasonable and articulable suspicion of criminal activity which justified the stop of appellant's vehicle. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Bobo, 37 Ohio St.3d at 180.
Having determined that the investigative stop of appellant's vehicle was proper, we find that the trial court properly denied appellant's motion to suppress. Appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] The results of the test revealed that appellant had a breath alcohol concentration of .187 grams per two hundred ten liters of breath.